UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

WIDOWS SONS GRAND CHAPTER OF THE KINGS
GUARD INC. and THE ALLIANCE WINDOW SONS MRA
WORLDWIDE, INC.,

                              Plaintiffs,         DECISION AND ORDER

       -vs-                                      17-CV-6701-CJS

CARL DAVENPORT,

                              Defendant.
_____

## APPEARANCES

| | |
|---|---|
| FOR THE PLAINTIFF: | Philip B. Abramowitz, Esq. |
| | Kloss, Stenger & LoTempio |
| | 69 Delaware Avenue, Suite 1003 |
| | Buffalo, NY 14202 |
| | pabramowitz@aol.com |
| | Tel: (716) 583-1205 |
| FOR THE DEFENDANTS: | Stefan R. Stoyanov, Esq. |
| | Stoyanov Law PLLC |
| | 757 Third Avenue, 20th Floor |
| | New York, NY 10017 |
| | stefan@stoyanovlaw.com |
| | Tel: (212) 602-1338 |

## INTRODUCTION

Plaintiffs, Widows Sons Grand Chapter of the Kings Guard Inc., and the Alliance Widows Sons MRA Worldwide, Inc.[1] (collectively "Kings Guard"), both of Webster, New York, are suing Defendant, Carl Davenport ("Davenport"), an individual residing in the United Kingdom,

---

[1] The caption of the complaint evidently contains a typographical error in its reference to The Alliance Window [sic] Sons MRA Worldwide, Inc. Compl. 1, Oct. 10, 2017, ECF No. 1. During the deposition of Carl Davenport, counsel used the abbreviation WSMRA, which the Court will assume refers to this organization. *See, e.g.*, Davenport Dep. 25:8, Jan. 4, 2019, ECF No. 17-2.

for trademark infringement, false designation of origin, and false advertising under the Lanham Act, as well as false advertising, trademark infringement, fraud, tortious interference with contract and unfair competition under New York law. Kings Guard seeks a declaratory judgment, compensatory and punitive damages, and injunctive relief. Compl. Oct. 10, 2017, ECF No. 1. Davenport responded by filing a motion to dismiss. First Motion to Dismiss for Lack of Jurisdiction, Oct. 15, 2017, ECF No. 6. After reviewing the papers and hearing oral argument, the Court reserved decision on Davenport's motion to dismiss pending jurisdictional discovery and potential further submissions. Based upon the jurisdictional discovery and further submissions received on the motion, the Court grants Defendant's application to dismiss the complaint.

## BACKGROUND

The Court's prior decision, familiarity with which is presumed, laid out the necessary background information and will only be repeated here as needed for the jurisdictional issue. Defendant Carl Davenport ("Davenport") underwent an examination before trial on October 25, 2018. Davenport Dep. Jan. 4, 2019, ECF No. 17-2. Plaintiffs' counsel was in Clarence, New York, Davenport was in England, and his attorney was in New York City, all connected telephonically. *Id*. 3.

Counsel questioned Davenport about a memorandum he wrote on September 4, 2017, from himself "[a]nd the executive counsel [sic] of Widows Sons International Masonic Riders Association..." addressed to Robert Logan, Law Enforcement Committee of the Grand Lodge of New York and Grand Lodge of New York. *Id*. 12:7–9. The subject of the memorandum is: "withdrawal of recognition of Widows Sons Chapters in the Grand Lodge of New York jurisdiction...." *Id*. 12:23–13:2. The contents of the memo included: "Dear Brother Robert. On this day, September 4, 2017, the Widows Sons executive counsel [sic] has withdrawn our previous

request that the Grand Lodge of New York reinstate a grand chapter of Widows Sons of the Grand Lodge of New York jurisdiction under this—under our supervision…." *Id*. 13:13–19.

Previously, in 2009, Davenport signed a charter for the New York group, which served as a replacement charter because the New York group "never got one from the people that chartered them." *Id*. 24:21–23. The New York group was chartered by Scott Frum[2] and David Adams. *Id*. 17:7–9. The charter Davenport signed and Fred Broecker[3] sent permitted the New York group to "organize affiliate chapters under them, in their state, be able to charge dues in their chapter and set all the rules in their territory." *Id*. 22:13–20; 25:1–4. However, WSMRA[4] received no financial compensation as a result of issuing the charter. Dues paid by members of a New York chapter would be sent to the grand chapter in Long Island. *Id*. 17.

Davenport also stated he was the editor of an online magazine: WSMAG.org. *Id*. 28:18–20. And he testified that the Widows Sons International home page was at: Widows Sons.com. *Id*. 33:2–4.

## STANDARDS OF LAW

Plaintiff bears the burden of showing that this Court has personal jurisdiction over Davenport. *Metro. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 566 (2d Cir. 1996). "[W]here the parties have conducted extensive discovery regarding the defendant's contacts with the forum state, but no evidentiary hearing has been held—'the plaintiff's *prima facie* showing, necessary to defeat a jurisdiction testing motion, must include an averment of facts that, if credited by [the ultimate trier of fact], would suffice to establish jurisdiction over the

---

[2] Incorrectly spelled in the transcript at "From." The transcript also uses the word "counsel" over and over, when from the context it appears that the proper word should be "council."

[3] Fred Broecker is the International Secretary of the Widows Sons organization.

[4] Widows Sons Masonic Riders Association.

3

defendant.'" *Id.* at 567 (quoting *Ball v. Metallurgie Hoboken-Overpeld, S.A.*, 902 F.2d 194 at 197 (2d Cir. 1990), *cert denied* 498 U.S. 854 (1990)).

A federal court in a diversity action must look to the forum state's general jurisdictional or long-arm jurisdictional statute to determine whether *in personam* jurisdiction exists over a nonresident defendant. *See Savin v. Ranier*, 898 F.2d 304, 306 (2d Cir.1990) (*citing Arrowsmith v. United Press Int'l*, 320 F.2d 219, 222-25 (2d Cir.1963) (*en banc*)).

If the relevant statute allows the court to exercise jurisdiction, the court must then determine "whether the exercise of jurisdiction comports with due process." *Id*. (citation omitted). In that regard,

> [t]he due process test for personal jurisdiction has two related components: the "minimum contacts" inquiry and the "reasonableness" inquiry. The court must first determine whether the defendant has sufficient contacts with the forum state to justify the court's exercise of personal jurisdiction. For purposes of this initial inquiry, a distinction is made between "specific" jurisdiction and "general" jurisdiction. Specific jurisdiction exists when "a State exercises personal jurisdiction over a defendant in a suit arising out of or related to the defendant's contacts with the forum"; a court's general jurisdiction, on the other hand, is based on the defendant's general business contacts with the forum state and permits a court to exercise its power in a case where the subject matter of the suit is unrelated to those contacts. Because general jurisdiction is not related to the events giving rise to the suit, courts impose a more stringent minimum contacts test, requiring the plaintiff to demonstrate the defendant's "continuous and systematic general business contacts."
>
> The second stage of the due process inquiry asks whether the assertion of personal jurisdiction comports with "traditional notions of fair play and substantial justice"—that is, whether it is reasonable under the circumstances of the particular case. The Supreme Court has held that the court must evaluate the following factors as part of this "reasonableness" analysis: (1) the burden that the exercise of jurisdiction will impose on the defendant; (2) the interests of the forum state in adjudicating the case; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of the controversy; and (5) the shared interest of the states in furthering substantive social policies. While the exercise of jurisdiction is favored where the plaintiff has made a threshold showing of minimum contacts at the first stage of the inquiry, it may be defeated where the defendant presents a compelling case that the presence of some other considerations would render jurisdiction unreasonable.

*Metropolitan Life Insurance Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 567–68 (2d Cir. 1996). Since *International Shoe*, "specific jurisdiction has become the centerpiece of modern jurisdiction theory, while general jurisdiction [has played] a reduced role." *Goodyear*, 564 U.S., at 925 (quoting Twitchell, The Myth of General Jurisdiction, 101 Harv. L. Rev. 610, 628 (1988)). *Daimler AG v. Bauman*, 571 U.S. 117, 128 (2014).

## ANALYSIS

### General Jurisdiction

Davenport is not a New York resident. Therefore, the Court does not have general jurisdiction over him under N.Y. C.P.L.R. § 301. Additionally, the Court already determined that the pleadings and affidavits were insufficient to show that Davenport maintained an affiliation with New York sufficient to subject him to general jurisdiction here. Plaintiffs asks the Court to consider Davenport's deposition at pages 40 through 41, which they argue is "alone… sufficient evidence of the Defendant transacting business in New York and engaging in purposeful activities, availing himself the benefits and protections of the laws of New York." Pl.s' Reply Mem. of Law 5, Feb. 15, 2019, ECF No. 20. In view of Plaintiffs' reliance on those two pages, the Court reproduces them below (starting with the questions by Mr. Abramowitz on page 39, line 21):

> Q. Was the Kings Guard Chapter a New York—was there a New York Kings Guard Chapter?
>
> A. There was a group of guys that called themselves the New York State King [sic] Guard Chapter.
>
> Q. All right.
>
> A. I'm not total [sic] sure if they went through the proper channels to become a chapter.
>
> Q. All right. Will you turn to page 15 of 16 here, please?
>
> A. I'm there.

5

> Q. Okay. The after the [sic] portion which says, New York 2016 bylaws, does it say during the GL—which I presume is grand lodge; is that correct?
>
> A. Correct.
>
> Q. Of New York investigation of the unrecognized Kings Guard Chapter in New York, our founder, WB, Carl Davenport, made a request to the grand master of New York, asking that the grand master of New York allow one Widows Sons chapter to operate in his jurisdiction and report directly to the executive counsel [sic].
>
> First question, is—is that what it says?
>
> A. That's what it says.
>
> Q. All right. And what did you do once you received a request?
>
> A. What? I didn't catch that.
>
> Q. It says our founder, Carl Davenport, made a request for the grand master of New York asking that the grand master of New York allow one Widows Sons chapter to operate in his jurisdiction.
>
> And the question is, did you have authority to make that request?
>
> A. I think I did.
>
> Q. Okay. And it further says—
>
> A. Yes, I did.
>
> Q. And it says after that, after several conversations with those claiming to be Widows Sons in New York, and several social media disputes, determined not to be good of free masonry in attacking the charter of other masons.
>
> On September 4, 2017, the request was withdrawn by the executive counsel of the WSMRA. And the grand master of New York was informed by letter from the executive counsel [sic] that the WSMRA no longer desired to recognize or be represented by chapters of Widows Sons in the State of New York.
>
> Is that what it says?
>
> A. That's what it says.

Davenport Dep. 39:21–41:23.

Davenport signed the charter for the New York group in his capacity as executive director for the WSMRA. He did not send it to New York. The deposition transcript establishes that it was mailed by Fred Broecker,[5] and not at Davenport's request. Further Davenport testified that the New York group was chartered by other individuals and he signed a charter to replace one the New York group never received from their original chartering agents. Moreover, New York law recognizes a difference between an individual acting as an agent for an entity, versus acting for himself. *Lehigh Val. Industries, Inc. v. Birenbaum*, 527 F.2d 87, 92–93 (2d Cir. 1975); *Laufer v. Ostrow*, 55 N.Y.2d 305, 313–14 (1982) ("He does not subject himself, individually, to the CPLR 301 jurisdiction of our courts, however, unless he is doing business in our State individually."). Davenport's deposition testimony shows he was acting on behalf of an entity.

Regarding Davenport's request to the grand master of New York to permit one Widows Sons chapter to operate in his jurisdiction, the Court disagrees with Plaintiffs' interpretation of that event. Although Davenport conceded he did send a *request* to the grand master of New York, he also stated that the executive council withdrew the request. Davenport Dep. 40.

## CONCLUSION

Following jurisdictional discovery, the Court is unpersuaded that Plaintiffs have established *in personam* jurisdiction over Defendant. Therefore, the Court grants Defendant's motion to dismiss, ECF No. 6. The Clerk will enter judgment and close the case.

DATED: October 22, 2019
        Rochester, New York

    /s/ Charles J. Siragusa
    CHARLES J. SIRAGUSA
    United States District Judge

---

[5] Fred Broecker's name is spelled "Broker" in the transcript.